**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (State Bar No. 215948)
BWahlquist@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:    (213) 547-4900
Facsimile:    (213) 547-4901

**KELLEY DRYE & WARREN LLP**
Michael C. Lynch (*pro hac vice forthcoming*)
James B. Saylor (*pro hac vice forthcoming*)
MLynch@kelleydrye.com
JSaylor@kelleydrye.com
3 World Trade Center
175 Greenwich Street
New York, NY  10007
Telephone:    (212) 808-7800
Facsimile:    (212) 808-7897

*Attorneys for Defendants 2K Games, Inc and Take-Two Interactive Software, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A., a minor, represented by his mother and next friend ANDREA DEAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>2K GAMES, INC.; and TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>Defendants. | Case No. 3:23-cv-5961-JD<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>*[Filed concurrently with Request for Judicial Notice and [Proposed] Order]*<br><br>Hon. James Donato<br><br>Hearing Date:  March 14, 2024<br>Time:              10:00 a.m.<br>Location:        Courtroom 11 |

**PLEASE TAKE NOTICE** that on Thursday, March 14, 2024, at 10:00 a.m., in the above-captioned Court, at Courtroom 11 on the 19th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Defendants") will and hereby do move the Court for an order dismissing Plaintiff's Complaint in its entirety.

Defendants' Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff fails to state a viable cause of action. Plaintiff fails to plausibly allege that Take-Two committed conversion or civil theft, and/or violated the UCL, and thus the Complaint fails to assert a claim. Further, judicially noticeable user agreements for Defendants' games (which agreements can also be considered as incorporated by reference into the Complaint) make clear that Plaintiff's Complaint cannot survive a Rule 12(b)(6) challenge and further, cannot be amended to do so. Thus, Defendants request that the Complaint be dismissed with prejudice.

This Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, any Reply filed in support, all pleadings, records, and files in this action, and such evidence and argument as may be presented at or before the hearing on this Motion.

DATED: February 2, 2024                        KELLEY DRYE & WARREN LLP

By: */s/ Becca Wahlquist*
Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1
I.  INTRODUCTION ................................................................................................................ 1
II. FACTUAL BACKGROUND .............................................................................................. 2
    A.  Plaintiff's Allegations ................................................................................................ 2
    B.  Take-Two's Terms of Service and End-User License Agreement ........................... 3
III. ARGUMENT ....................................................................................................................... 5
    A.  Legal Standard for a Motion to Dismiss ................................................................... 5
    B.  The UCL Claim Should Be Dismissed ..................................................................... 6
        1.  Plaintiff Lacks Statutory Standing under the UCL as He Asserts
            No Cognizable Economic Injury ................................................................... 6
        2.  Even If He Had Statutory Standing, Plaintiff Fails to State a Viable
            Claim under the UCL ..................................................................................... 8
    C.  The Conversion Cause of Action Should Be Dismissed ........................................ 10
    D.  The Civil Theft Cause of Action Should Be Dismissed ......................................... 13
IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arroyo v. IA Lodging Santa Clara, LLC*,
 No. 20-CV-08219-LHK, 2021 WL 2826707 (N.D. Cal. July 7, 2021) ................................... 6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................. 5, 11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ......................................................................................................... 5

*Best Fresh LLC v. Vantaggio Farming Corp.*,
 No. 3:21-cv-00131-BEN-WVG, 2022 WL 4112231 (S.D. Cal. Sept. 8, 2022) .............. 14

*Clark v. Cal. Dep't of Forestry and Fire Prot.*,
 212 F. Supp. 3d 808 (N.D. Cal. 2016) ............................................................................. 5

*Coffee v. Google, LLC*,
 No. 20-CV-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ........................... 6, 8

*Doe v. Epic Games, Inc.*,
 435 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................................... 7

*In re Emery*,
 317 F.3d 1064 (9th Cir. 2003) ....................................................................................... 11

*Ferrick v. Santa Clara Univ.*,
 231 Cal. App. 4th 1337 (2014) ...................................................................................... 13

*Johnson v. Mitsubishi Dig. Elecs. Am., Inc.*,
 365 F. App'x 830 (9th Cir. 2010) .................................................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ...................................................................................... 5, 6

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005) ......................................................................................... 6

*Kremen v. Cohen*,
 337 F.3d 1024 (9th Cir. 2003) ....................................................................................... 11

*Leong v. Square Enix of Am. Holdings, Inc.*,
 No. CV09-4484 PSGVBKX, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010)
 (citation omitted), aff'd, 462 F. App'x 688 (9th Cir. 2011) ................................ 8, 9, 11

*Mai v. Supercell Oy*,
 648 F. Supp. 3d 1130 (N.D. Cal. 2023) ....................................................................... 7, 8

*People v. Sanchez*,
 113 Cal. App. 4th 325, 6 Cal. Rptr. 3d 271 (2003) ....................................................... 14

*People v. Sisuphan*,
    181 Cal. App. 4th 800 (2010) ........................................................................................13

*People v. Williams*,
    57 Cal. 4th 776 (2013) ..................................................................................................14

*Pirozzi v. Apple, Inc.*,
    966 F. Supp. 2d 909 (N.D. Cal. 2013) ..........................................................................10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..........................................................................................6

*Taylor v. Apple, Inc.*,
    2021 WL 11559513 (N.D. Cal. Mar. 19, 2021) ..........................................................7, 8

*Voris v. Lampert*,
    7 Cal. 5th 1141 (2019) ..................................................................................................11

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, et seq. ..................................................................................2

Cal. Penal Code § 484 ....................................................................................................2, 10, 13

Cal. Penal Code § 496 ....................................................................................................2, 10, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................2, 5, 6, 15

Fed. R. Evid. 201(b) ..............................................................................................................5, 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant 2K Games, Inc. ("2K Games") publishes various video game franchises, one of which is NBA 2K. Videogames in the NBA 2K franchise are released annually, in advance of the upcoming NBA season—each is a stand-alone game, and operates within its own online environment. Plaintiff J.A. claims to have purchased in-game virtual currency ("VC") for use in two or more games in the NBA 2K franchise, that was (or at the time the complaint was filed, would be) eliminated when online servers for that NBA 2K game were sunset (retired and shut down). His lawsuit makes a novel argument: J.A. alleges that when the online game environment for an older game is retired, Defendants are committing conversion, theft, and an unfair business practice because players would no longer be able to use any VC purchased for use in the online version of the game. However, Defendants are allowed to make business decisions about how their games operate and in-game VC is a thing that exists solely within the confines of each of those games. VC is not Plaintiff's property: instead, in-game VC are fictions created by game publishers, subject to the publishers' terms of service and user agreements.

Plaintiff's claims to property ownership of VC within the games, as well as his suggestions that Defendants have an obligation to refund unredeemed VC or enable the transfer of VC from one of Defendants' games to another, are merely conclusory (and wholly invented). The Complaint does not identify any contract, law, term of sale/use, or any instrument, such as a registration of title, supporting Plaintiff's alleged property rights in the VC. Nor does it identify in what ways Defendants' conduct breached any of their obligations, or how Defendants acted in any manner inconsistent with their published terms of service or user agreement. Thus, Plaintiff fails to allege facts sufficient to show that Defendants have violated any law, and the Complaint is subject to dismissal.

Moreover, Plaintiff's failure to state a viable claim is even more evident in the face of Defendants' judicially noticeable Terms of Service ("TOS") and End User License Agreement ("EULA"), both of which agreements may also be considered as incorporated by reference into the Complaint. Plaintiff wants to dictate his property rights to VC in Defendants' games without

any reference to the terms guiding the use of the games and defining the nature of in-game VC; but a Complaint cannot survive a Rule 12(b)(6) inquiry by omitting key facts that are problematic for a Plaintiff's claims.

The Complaint should be dismissed, and because Plaintiff's causes of action cannot be redeemed through further factual allegations, it should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Allegations

As alleged in the Complaint, games in the NBA 2K franchise in part operate in a live, online environment, where players can earn, win, or opt to purchase VC that can be used to "boost player performance, purchase uniform upgrades, add unique hairstyles" and other such features available to those earning, winning, or purchasing VC. Compl. [Dkt. 1], ¶¶ 5, 18-20, 23. Plaintiff alleges, "[s]pending VC allows gamers to improve the quality of their players' skill and, accordingly, their ability to compete against others online." *Id.*, ¶ 15. However, the Complaint does not allege that playing one of the NBA 2K games requires the purchase of VC or that players who purchase VC can best skilled players who do not.

Plaintiff alleges that 2K Games periodically publishes new NBA 2K games to "reflect real-world changes in athlete characteristics and team roster, improve the style and graphics of the gaming environment, and, of course, offer new ways to spend VC." *Id.*, ¶¶ 6, 21. 2K "retires older versions of [their] games" just over two years after the game is released. *Id.*, ¶¶ 23-24. For example, NBA 2K21, released in advance of the 2020-2021 NBA season, sunset on December 31, 2022. *Id.* ¶ 24. Plaintiff explains, "[a]ccording to 2K Games, the cost of continuing the operation and maintenance of servers eventually becomes untenable as fewer and fewer gamers use older versions of the game." *Id.*, ¶ 23.

Plaintiff does not specifically allege which games in the NBA 2K franchise he played, but he alleges to have lost purchased VC when the servers for NBA 2K21 were sunset in December 2022, and expected to lose purchased VC when the servers for NBA 2K22 would be sunset in December 2023. *Id.* ¶¶ 24, 31. Plaintiff's three causes for action—(1) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.); (2) Conversion; and (3) Civil Theft (Cal. Penal Code

§§ 484 & 496)—are based on allegations that 2K Games retires their online servers sooner than other online game publishers, terminating players' access to VC remaining in their accounts with no warning; that 2K Games does not offer refunds for unredeemed VC; and that 2K Games does not allow players to transfer existing VC to other 2K Games products. *Id.*, ¶¶ 7, 8, 24–25, 27. Plaintiff offers no facts showing that any such restrictions on VC use are illegal or in breach of promises made to players.

### B. Take-Two's Terms of Service and End-User License Agreement

The Take-Two's website, take2games.com, and 2K Games' website, store.2k.com, have each provided a link to the Terms of Service ("TOS") and the Limited Software Warranty and License Agreement, or End-User License Agreement ("EULA"), which are available to players through the games and on Defendants' websites, each of which provide the terms under which Take-Two and 2K Games makes their games available to its customers. *See* RJN, Ex. A (TOS) & Ex. B (EULA).[1] Under the subheading, "LIMITED LICENSE BY THE COMPANY," the TOS last updated March 2, 2020 states: "The Company grants you a limited, non-sublicensable license to access and use the Online Services. Such license is subject to this Agreement and, as applicable, the software EULA located at www.take2games.com/eula." RJN, Ex. A at 4. It further provided that "[t]his license is revocable at any time." *Id.* at 5. Under the subheading, "VIRTUAL CURRENCY AND VIRTUAL GOODS," the TOS provided,

> The Online Services, including software, may offer the ability to purchase and/or earn via gameplay **a limited license to use virtual currency** and/or virtual goods exclusively within applicable software and services provided by the Company . . . . Such license is subject to and specifically conditioned upon your acceptance of, and compliance with, the EULA, this Agreement and any other applicable policies or agreements.

*Id.* at 6 (emphasis added).

The EULA last updated July 13, 2019 provides, "BY OPENING, DOWNLOADING, INSTALLING, COPYING, OR OTHERWISE USING THE SOFTWARE, AND ANY OTHER

---

[1] Take-Two updated its TOS (last updated March 2, 2020) on January 29, 2024. *See* RJN Exs. A, C. The EULA last updated July 13, 2019, remains on the Take-Two website but will be phased out in the near future in connection with the TOS update, at which point the EULA URL will redirect to the updated TOS. *See* RJN Exs. B, D.

MATERIALS INCLUDED WITH THE SOFTWARE, YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT." RJN, Ex. B at 1. Under the subheading, "VIRTUAL CURRENCY AND VIRTUAL GOODS," the EULA provided:

> If the Software allows you to purchase and/or earn through play a **license to use Virtual Currency** and Virtual Goods, the following additional terms and conditions apply. VIRTUAL CURRENCY & VIRTUAL GOODS : The Software may enable users to (i) use fictional virtual currency as a medium of exchange exclusively within the Software ("Virtual Currency" or "VC") and (ii) **gain access to (and certain limited rights to use) virtual goods within the Software** ("Virtual Goods" or "VG"). Regardless of the terminology used, VC and VG represent **a limited license right** governed by this Agreement. Subject to the terms of and compliance with this Agreement, Licensor hereby grants you the nonexclusive, non-transferable, non-sublicensable, **limited right and license to use VC and VG** obtained by you for your personal, non-commercial gameplay **exclusively within the Software**. Except as otherwise prohibited by applicable law, VC and VG obtained by you are licensed to you, and **you hereby acknowledge that no title or ownership in or to VC and VG is being transferred or assigned hereunder**. **This Agreement should not be construed as a sale of any rights in VC and VG**.
>
> VC and VG do not have an equivalent value in real currency and do not act as a substitute for real currency. You acknowledge and agree that Licensor may revise or take action that impacts the perceived value of or purchase price for any VC and/or VG at any time except as prohibited by applicable law . . . . **[T]he license granted hereunder to VC and VG will terminate** in accordance with the terms and conditions of this Agreement and the Software documentation, **when Licensor ceases providing the Software**, or this Agreement is otherwise terminated.

*Id.* at 5–6 (emphasis added.)

Under the subheading, "NON-REDEEMABLE," the EULA provided, "VC and VG may only be redeemed for in-game goods and services. You may not sell, lease, license, or rent VC or VG, convert them into convertible VC. VC and VG may only be redeemed for in-game goods or services and are not redeemable for any sum of money or monetary value or other goods from Licensor or any other person or entity at any time . . . . " *Id.* at 7. Under the subheading, "NO REFUND," the EULA provided, "[a]ll purchases of VC and VG are final and **under no circumstances will such purchases be refundable, transferable,** or exchangeable. Except as

prohibited by applicable law, **Licensor has the absolute right to manage, regulate, control, modify, suspend, and/or eliminate such VC and/or VG as it sees fit in its sole discretion**, and Licensor shall have no liability to you or anyone else for the exercise of such rights." *Id.* at 7–8 (emphasis added).

The TOS and EULA in effect when Plaintiff would have purchased his NBA 2K games were last updated March 2, 2020 (TOS) and July 13, 2019 (EULA).  *See* RJN Exs. A, B, C, and D.  Plaintiff's Complaint does not allege any contrary terms to those in these Take-Two agreements that would grant him the property rights he attributes to VC.

## III.  ARGUMENT

### A.  Legal Standard for a Motion to Dismiss

Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007), and presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim is facially plausible when a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Cal. Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (quoting *Ashcroft*, 556 U.S. at 678).  "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).  "And even where facts are accepted as true, 'a plaintiff may plead himself out of court' if he 'pleads facts which establish that he cannot prevail on his . . . claim.'" *Id.* (quoting *Weisbusch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

As a general rule, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6).  *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018).  Two exceptions to this rule are the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201, which "permit district courts to consider materials outside a complaint." *Id.*

Take-Two and 2K Games' TOS and EULA, which have been available to all purchasers

and users of the games, may be judicially noticed. "The Court may take judicial notice of matters that are either 'generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b)." *Arroyo v. IA Lodging Santa Clara, LLC,* No. 20-CV-08219-LHK, 2021 WL 2826707, at *2 (N.D. Cal. July 7, 2021). "Public records and documents on publicly available websites are proper subjects of judicial notice." *Id.* A court should not accept as true any allegations that are contradicted by exhibits or matters of which judicial notice can be taken. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). *See also* RJN, filed concurrently.

Additionally and alternatively, the TOS and EULA in effect when Plaintiff claims to have purchased games may be considered via the incorporation by reference doctrine, which the Ninth Circuit has "extended to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, **even though the plaintiff does not explicitly allege the contents of that document in the complaint**." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (emphasis added). This extension of the doctrine prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Khoja*, 899 F.3d at 988 (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)). "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Knievel*, 393 F.3d at 1076.

Accordingly, the Court may, on a motion to dismiss, consider Take-Two and 2K Games' TOS and EULA, even if Plaintiff makes no reference to them or their terms in the Complaint.

### B.  The UCL Claim Should Be Dismissed

#### 1.  Plaintiff Lacks Statutory Standing under the UCL as He Asserts No Cognizable Economic Injury

First, Plaintiff's cause of action for Unfair Business Practice fails because Plaintiff alleges no cognizable economic injury resulting from Defendants' conduct. "A private person has statutory standing under the UCL only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Coffee v. Google, LLC*, No. 20-CV-03901-BLF,

2022 WL 94986, at *8 (N.D. Cal. Jan. 10, 2022) (quoting Cal. Bus. & Prof. Code § 17204). However, the Ninth Circuit has held that under the UCL, "a virtual item is not a 'thing of value,' even if it may be sold for real currency on an exchange, if the item provider's terms of service 'prohibit ... the sale of virtual chips for cash on a secondary market.'" *Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1137 (N.D. Cal. 2023) (citing *Kater v. Churchill Downs Inc.,* 886 F.3d 784, 788 n.2 (9th Cir. 2018)); *Taylor v. Apple, Inc.*, 2021 WL 11559513 (N.D. Cal. Mar. 19, 2021); *see Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) ("Digital content" acquired by players are transactions involving virtual items).

In a similar vein, in 2020, the Internal Revenue Service ("IRS") removed in-game virtual currencies from the list of examples of convertible virtual currencies and released a statement clarifying that such transaction did not need to be reported in a taxpayer's tax return. *IRS removes in-game currencies from list of convertible virtual currencies*, 2/19/2020 RIA Fed, Tax Update, 2020 WL 814548 (RIA). As the IRS explained, unlike convertible virtual currency, such as Bitcoin, which have equivalent value in real currency and act as substitutes for real currency, in-game currencies are not convertible and do not leave the game environment. *Id.*

Here, Plaintiff's alleged economic injury is that he used "fiat currency to purchase game currency, or VC," which was supposedly "removed" (or was soon to be removed) from his game account. Compl. [Dkt. 1], ¶¶ 31, 57. However, the EULA provides that "VC and VG do not have an equivalent value in real currency and do not act as a substitute for real currency." RJN, Ex. B at 6. The EULA further provides, "VC and VG may only be redeemed for in-game goods and services. You may not sell, lease, license, or rent VC or VG, convert them into convertible VC. VC and VG may only be redeemed for in-game goods or services and are not redeemable for any sum of money or monetary value or other goods from Licensor or any other person or entity at any time, except as expressly provided herein or otherwise required by applicable law." *Id.* at 7. Plaintiff's economic damages claim is limited to the alleged loss of VC, a non-convertible virtual item, which Plaintiff is prohibited from selling in the secondary market. Therefore, Plaintiff alleges no facts showing the loss of a "thing of value."  The Complaint offers nothing but conclusory allegations to support his entitlement to any rights to transfer VC or substitute VC for real currency.

There is also no cognizable economic injury under the UCL where the plaintiff has received the benefit of what he has bargained for with a defendant. Where "a party obtains exactly what they paid for, there is no cognizable economic injury for the purposes of UCL standing." *Mai v. Supercell Oy*, 648 F.Supp.3d at 1134; *Johnson v. Mitsubishi Dig. Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010). In *Coffee*, 2022 WL 94986, at *8, plaintiff alleged Google violated the UCL because players lost their virtual currency when they purchased loot boxes.[2] Dismissing plaintiffs' UCL claim for lack of standing, the *Coffee* Court noted that plaintiffs had not alleged that they had not received all of the VC they had purchased, but had in fact "obtained exactly the virtual currency they paid for." *Id.* In *Taylor v. Apple, Inc.,* 2021 WL 11559513, at *4, the court held that plaintiff, who allegedly lost virtual currency when he purchased loot boxes, had suffered no cognizable economic injury because "[h]e obtained exactly what he paid for—virtual currency that he was free to use as he wished in the game." As with the *Coffee* and *Taylor* plaintiffs, here, there are no allegations that Plaintiff did not receive the right amount of VC purchased or earned in Defendants' games. Plaintiff's VC provided him with exactly what he bargained for—the *ability* to redeem the VC to boost his players' attributes and to obtain cosmetic options like different uniforms, pursuant to the terms of the EULA while the online version of the game remained active. While Plaintiff may have opted not to use all of his purchased VC during the years the online server for a specific game was active, Plaintiff received the benefit for which he bargained.

### 2. Even If He Had Statutory Standing, Plaintiff Fails to State a Viable Claim under the UCL

An unfair business practice under the UCL is "'one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Leong v. Square Enix of Am. Holdings, Inc.*, No. CV09-4484 PSGVBKX, 2010 WL 1641364, at *7 (C.D. Cal. Apr. 20, 2010) (citation omitted), aff'd, 462 F. App'x 688 (9th Cir. 2011). In *Leong*, plaintiffs alleged that they purchased the defendants' online game without knowledge of the forfeiture clause in the game's user agreement, which provided that if players failed to pay the required subscription fee to play the game for more than three consecutive months, the users'

---

[2] Loot boxes are bundles of virtual items that players may purchase with virtual currency. The specific virtual items within a loot box are not known until after the player's purchase.

in-game account and characters would be deleted. *Id.* at *1. Plaintiffs alleged that defendants Square Enix enriched themselves at players' expense by forcing players returning to the game to repurchase their forfeited characters. *Id.* at *7. Finding that plaintiffs had failed to allege that defendant's business practices were unfair, the *Leong* court noted, "[d]efendants provide a for-profit service to users, and Plaintiffs fail to provide any facts that suggest they were in any way coerced or forced to spend any money at all by [d]efendants." *Id.*

Here, Plaintiff alleges that each new game in the NBA 2K franchise "reflect[s] real-world changes in athletic characteristics and team rosters, improve[s] the style and graphics of the gaming environment, and, of course, offer[s] new ways to spend VC." Compl. [Dkt. 1], ¶ 21. Explaining why 2K Games retires "servers that allow games to operate in a live, online environment," Plaintiff acknowledges that "[a]ccording to 2K Games, the costs of continuing the operation and maintenance of servers eventually becomes untenable as fewer and fewer gamers use older versions of the game." *Id.*, ¶ 23. Additionally, Plaintiff concedes that he purchased at least two NBA 2K games with sunset dates, and had purchased VC in both games—he knew (at some point) that there was a deadline to use in-game VC for certain older games, if he wanted to go back to that older game and exhaust any unused VC.

Plaintiff pleads no facts to suggest that it is immoral, unethical, oppressive, or the like for Defendants to exercise their business judgment and set the terms of the license granted to Plaintiff to use VC in one of the NBA 2K games. And Plaintiff recognizes that various factors weigh into Defendants' judgement to sunset old online environments. As alleged, Defendants make substantial investments in developing a new NBA 2K game each year, tracking the movement and performance of numerous players and revising player profiles to reflect current rosters and player statistics. 2K Games also makes technological enhancements, updating and improving their gaming capability. *See* Compl. [Dkt. 1] at ¶ 21. As Plaintiff thus admits, for Defendants, hosting a live, online environment is expensive, and maintaining it needs to be consistent with Defendants' business considerations. Plaintiff also seems well aware that many games played through online servers are commonly retired. "Each year, when [2K Games] introduces new version of NBA 2K, WWE 2K, and PGA Tour 2K, 2K Games also retires older versions of those games by disabling

the servers that allow the games to operate in a live, online environment." *Id.*, ¶ 23.[3] "**Like other sports videogame franchises,** 2K Games continually replaces older versions with updates." *Id.*, ¶ 21 (emphasis added).  Additionally, Defendants' TOS makes clear that VC within their games may be lost: VC "may be consumed or lost by players in the course of gameplay according to the game's rules." RJN, Ex. A at 6.

For all these reasons set forth by Plaintiff himself, Defendants' alleged conduct neither "offends an established public policy;" nor is it "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," as Plaintiff alleges.  Plaintiff therefore fails to allege an unfair business practice to support his UCL claim.

To satisfy the fraudulent prong under the UCL, "plaintiffs must point to a misrepresentation with particularity and plead that the misrepresentation 'was an immediate cause of the injury-producing conduct.'" *Pirozzi v. Apple, Inc.,* 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)).  Here, Plaintiff alleges *no facts showing a single misrepresentation* made by Defendants. His only allegations about *any* representation made by Defendants is about why maintaining live online environments for earlier versions of their games are economically untenable. *See* Compl. [Dkt. 1], ¶ 23.  Plaintiff also fails to allege how any representation made by Defendants caused injury-producing conduct.  Plaintiff thus does not sufficiently allege the fraudulent prong under the UCL.

Finally, Plaintiff's "unlawful" UCL claim is premised on Defendants' alleged "civil theft," in violation of Cal. Pen. Code, §§ 484 and 496, and his alleged "property rights" under the California Constitution.  As discussed herein, Plaintiff has no property rights in VC, and cannot establish that Defendants committed theft.  Plaintiff therefore fails to satisfy the unlawful prong, and Plaintiff's UCL claim should be dismissed in its entirety.

**C.    The Conversion Cause of Action Should Be Dismissed**

Plaintiff fails to sufficiently allege conversion because his allegations of ownership in VC and Defendant's misconduct are not supported by "specific factual allegations" to state a claim to

---

[3] Defendants note that while a Complaint's allegations are taken as true for purposes of this Motion to Dismiss, not all titles listed here by Plaintiff are games that are released annually.  But Plaintiff may not know this, as the only game he actually claims to have played is NBA 2K.

relief and "nudge" his claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. To maintain a claim for conversion, Plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citing *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1065 (1998)). To determine whether plaintiff has a property right, the courts apply a three-part test: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (citation omitted). Contractual provisions may also "determine whether the plaintiff has a possessory right" to the property in dispute. *Voris v. Lampert*, 7 Cal. 5th 1141, 1152 (2019). To determine whether users have ownership rights in video game data, the Court looks at the game publisher's user agreement. *See Leong,* 2010 WL 1641364, at *6.

Plaintiff pleads no facts to support his conclusory allegation that he has ownership or possessory rights in the VC that he purchased to use in a particular NBA 2K game. To the contrary, Defendants' EULA provides in no uncertain terms that players have "no title or ownership in or to VC and VG" and the EULA "should not be construed as a sale of any rights in VC and VG." RJN, Ex. B at 6. The TOS provides that the "Online Services . . . offer the ability to purchase and/or earn via gameplay a limited license to use virtual currency. RJN, Ex. A at 6. In the subsection, "VIRTUAL CURRENCY AND VIRTUAL GOODS," the EULA repeatedly provides that players have a "license to use Virtual Currency," or "a limited license right governed by the [EULA]," and that "the license granted hereunder to VC and VG will terminate in accordance with the terms and conditions of this Agreement and the Software documentation, when Licensor ceases providing the Software . . . . " RJN, Ex. B at 6–7. Further, the TOS provides that the limited license "is revocable at any time." RJN, Ex. A at 5.

In *Kremen*, the Ninth Circuit noted that a domain name, like corporate stock or land, was a well-defined interest; the registrant of the domain name determines where on the internet users of the domain name are sent; and ownership was exclusive because registration of the domain name informed others of exclusive ownership status. *Kremen*, 337 F.3d at 1030. But unlike a

domain name, which can be possessed and controlled exclusively by a single registrant, in-game VC is not transferred or registered to any player. Instead, Defendants' players are granted a limited, revocable license to *use* the VC only within the confines of that game, and only pursuant to the terms of the EULA. Accordingly, Plaintiff cannot show he had any defined interest in the VC, that he had exclusive possession or control of the VC, or that he had any legitimate claim to exclusivity in the VC. Plaintiff therefore fails to show that he had the kind of ownership of possessory property right required to bring a conversion cause of action. Moreover, it is difficult to see how Plaintiff could bring a viable claim of conversion against Defendants *in advance* of the alleged theft. When he filed the Complaint in early November, Plaintiff was well aware that the time to use any purchased VC he had remaining in NBA 2K22 (if any) was drawing to a close at the end of December 2023 (Compl. [Dkt. 1], ¶ 31), and he had the ability to use any of his purchased VC before the sunset of that game's online servers.

Plaintiff also cannot establish that Defendants committed a wrongful act tied to alleged conversion so as to support a UCL claim. Plaintiff does not allege that he could not redeem the VC during the term that the NBA 2K game he purchased it for was available online. Nor does he allege that valid VC wrongfully disappeared from his account while the game was online. While he alleges that Defendants failed to give him a refund or permit the transfer of credit for the unredeemed VC after the online platform was retired, the EULA provided that "under no circumstances" would the purchase of VC be "refundable, transferable, or exchangeable." Plaintiff also does not allege that Defendants discontinued the online server prior to the pre-set sunset date. Plaintiff contends that Defendants acted without providing warning, but Plaintiff pleads that he had notice that Defendants remove online access to the NBA 2K game in late December of each year—he alleges that server sunset was predictable, and that he had lost VC at server sunset several times (and kept purchasing new NBA 2K games, and VC for those games). *See* Compl. [Dkt. 1], ¶ 31. Plaintiff fails to allege that Defendants retired online environments in any manner consistent with Defendants' terms, and while he references other game companies who might have different policies for use of their games' VC, he points to no regulations or legal requirements for gaming companies to adhere to any specific rules for VC usage.

Simply put, Plaintiff does not allege any facts to support his conclusory allegations that he *should* be able to obtain a refund, transfer, or exchange of any purchased VC he did not use. No valid claim of conversion exists here.

### D. The Civil Theft Cause of Action Should Be Dismissed

Plaintiff claims that Defendants committed civil theft, in violation of Cal. Penal Code §§ 484 and 496, by "embezzle[ing]" his VC and by fraudulently taking money in exchange for VC with knowledge that any unredeemed VC would be "removed when the game retired." Compl. [Dkt. 1], ¶¶ 64, 66-67. However, Plaintiff fails to sufficiently allege any theory of civil theft. Cal. Pen. Code, § 484 provides: "Every person . . . who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft." Plaintiff alleges "theft by embezzlement," even though that is not defined in the cited code. In any event, embezzlement is the "appropriation to one's own use of property delivered to him for devotion to a specified purpose other than his own enjoyment of it." *People v. Sisuphan*, 181 Cal. App. 4th 800, 814 (2010) (quoting *People v. Hodges*, 153 Cal. App. 2d 788, 793 (1957)). To establish embezzlement, plaintiff must show (1) the conversion of trusted funds or property and (2) an intent to defraud. *Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 1347 (2014).

Here, Plaintiff alleges no facts to even suggest that Plaintiff had entrusted Defendants with VC, as Plaintiff had nothing more than a limited, revocable license (granted to him by Defendants) in the limited use of VC. As discussed above, Plaintiff also cannot establish that Defendants converted VC, in which Plaintiff had no relevant property rights. Further, Plaintiff alleges no facts about misrepresentations or material omissions made by Defendants regarding the sunset of their online servers or user rights in VC. To the contrary, Defendants fully disclosed that the limited license to use VC "[would] terminate" and was fully revocable. RJN, Ex. A at 4–5 and Ex. B at 2, 6. Further, there are no allegations suggesting in what manner Defendants fraudulently appropriated the Plaintiff's purchased VC. Plaintiff also fails to allege appropriation because

Defendants only conferred a limited, revocable license that terminated pursuant to their disclosed terms.

Plaintiff attempts to malign Defendants by asserting that 2K games are retired "more rapidly than other publishers", as if there is something illegal or nefarious in this. Compl. [Dkt. 1], ¶ 7. But Plaintiff never alleges that Defendants misrepresented when the online versions of the games would be retired. Additionally, a plaintiff cannot establish a specific intent to commit theft if a defendant has a "good faith claim of right to possession." *Best Fresh LLC v. Vantaggio Farming Corp.*, No. 3:21-cv-00131-BEN-WVG, 2022 WL 4112231, at *8 (S.D. Cal. Sept. 8, 2022) (citations omitted). Here, pursuant to Defendants' disclosed terms, Defendants never conferred any ownership rights in the VC and they retained the absolute right to eliminate the VC and players' license to make VC transactions. RJN, Exh. B at 7–8. Plaintiff therefore fails to allege that Defendants embezzled Plaintiff's VC.

For reasons similar to why the "theft by embezzlement" theory fails, Plaintiff's theory of civil theft by false pretenses also fails. To establish theft by false pretenses, plaintiff must show "'(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation.'" *People v. Williams*, 57 Cal. 4th 776, 787 (2013) (quoting *People v. Wooten*, 44 Cal. App. 4th 1834, 1842 (1996)). Here, Plaintiff fails to identify a single false representation made by Defendants, fails to provide any support for an allegation that Defendants intended to defraud Plaintiff, and fails to allege that Plaintiff transferred property in reliance on a misrepresentation. Indeed, Plaintiff skirts the question of what terms he accepted and agreements he made during any VC purchase, and makes no specific allegations about what he saw and experienced and relied upon when purchasing VC, if he was indeed the person who made such a purchase from Defendants. Plaintiff therefore fails to allege that Defendants obtained his VC through false pretenses.

Finally, Cal. Pen. Code, § 496 makes it illegal to buy or receive stolen property. To show defendant received stolen property, plaintiff must show "(1) stolen property; (2) knowledge that the property was stolen; and (3) possession of the stolen property." *People v. Sanchez*, 113 Cal.

App. 4th 325, 332, 6 Cal. Rptr. 3d 271, 276 (2003). Plaintiff makes no specific allegations regarding how Defendants "received stolen property." Here, Defendants conferred users a limited, revocable right to use VC, and Plaintiff had no ownership or possessory rights in the VC. Therefore, Plaintiff alleges no facts to show either his unredeemed VC was stolen property, that Defendants knew that the unredeemed VC was stolen property, or that Defendants possessed "stolen" VC. Accordingly, Plaintiff fails to plead facts required to establish a Civil Theft cause of action.

## IV. CONCLUSION

For the reasons detailed above, Defendants asks this Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a viable claim. Moreover, given that no additional facts can bolster Plaintiffs' complaint to become plausible (especially given the TOS and EULA), Defendants ask that the dismissal be made with prejudice.

Defendants note that while they are not moving to enforce the arbitration agreement in the EULA due to Plaintiff's failure to plead or provide information sufficient to identify his NBA 2K account (as well as his claim that he is a minor and made VC purchases), Defendants reserve all rights to enforce the terms of its TOS and EULA including its arbitration agreement against members of the putative class Plaintiff seeks to represent.

Dated:  February 2, 2024               Respectfully submitted,

                                       KELLEY, DRYE & WARREN LLP

                                       */s/ Becca Wahlquist*
                                       Attorneys for Defendants