# EXHIBIT A

2026 WL 71863
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

James HEALY, Plaintiff - Appellant,

v.

MILLIMAN, INC., Defendant - Appellee.

No. 24-3327
|
Argued and Submitted November 19, 2025 San Francisco, California
|
Filed January 9, 2026

**Synopsis**
**Background:** Life insurance applicant brought class action against independent risk management, benefits and technology firm, alleging firm's inaccurate consumer reports violated Fair Credit Reporting Act's (FCRA) requirement that consumer reporting agencies adopt reasonable procedures to ensure maximum possible accuracy of reported information. The United States District Court for the Western District of Washington, John C. Coughenour, J., granted applicant's motion to certify an "inaccuracy class" but, later, 2024 WL 729203, granted firm's motion for partial summary judgment and dismissed the class. The district court denied applicant's motion for reconsideration but certified its order for interlocutory appeal. Applicant filed petition for permission to appeal, which was granted by Court of Appeals.

**Holdings:** The Court of Appeals, S.R. Thomas, Circuit Judge, held that:

[1] both named and unnamed members of applicant's "inaccuracy class" were required to produce evidence of Article III standing at summary judgment stage of litigation, but

[2] District Court improperly determined applicants lacked Article III standing, at summary judgment stage of litigation, to bring action, thereby requiring remand to District Court to determine whether applicant presented enough circumstantial evidence that rational trier of fact could reasonably infer there was class-wide standing.

Reversed and remanded.

**Procedural Posture(s):** Interlocutory Appeal; Motion for Summary Judgment.

West Headnotes (7)

[1]     **Federal Courts** 🔑 Standing

        **Federal Courts** 🔑 Summary judgment

        Court of Appeals reviews district court's grant of summary judgment de novo, including legal determinations regarding standing; in doing so, the Court of Appeals must determine whether district court correctly applied relevant substantive law. U.S. Const. art. 3, § 2, cl. 1; Fed. R. Civ. P. 56.

[2]   **Summary Judgment**  🔑  Burden of Proof

Unnamed members of certified class for money damages must demonstrate Article III standing at the summary judgment stage of litigation, before individual damages are awarded. U.S. Const. art. 3, § 2, cl. 1; Fed. R. Civ. P. 56.

[3]   **Summary Judgment**  🔑  Credit reporting

Both named and unnamed members of life insurance applicant's "inaccuracy class" were required to produce evidence of Article III standing at summary judgment stage of litigation in their class action against independent risk management, benefits and technology firm, alleging firm's inaccurate consumer reports violated Fair Credit Reporting Act's (FCRA) requirement that consumer reporting agencies adopt reasonable procedures to ensure maximum possible accuracy of reported information. U.S. Const. art. 3, § 2, cl. 1; Consumer Credit Protection Act § 607, 15 U.S.C.A. § 1681e(b); Fed. R. Civ. P. 56.

More cases on this issue

[4]   **Summary Judgment**  🔑  Direct or circumstantial evidence

On motion for summary judgment in class action, plaintiffs can use either direct evidence or circumstantial evidence to establish they have Article III standing. U.S. Const. art. 3, § 2, cl. 1; Fed. R. Civ. P. 56.

[5]   **Evidence**  🔑  Direct and indirect evidence

"Direct evidence" proves a fact without inference or presumption.

[6]   **Evidence**  🔑  Circumstantial evidence

"Circumstantial evidence" tends to show a fact by way of inferences.

[7]   **Federal Courts**  🔑  Need for further evidence, findings, or conclusions
      **Summary Judgment**  🔑  Credit reporting

District Court improperly determined, due to purported lack of direct evidence of concrete injury on class-wide basis, that life insurance applicants lacked Article III standing, at summary judgment stage of litigation, to bring class action alleging violation of Fair Credit Reporting Act (FCRA), on basis that independent risk management, benefits and technology firm prepared consumer reports containing inaccurate information, thereby requiring remand to District Court to determine whether applicant presented enough circumstantial evidence that rational trier of fact could reasonably infer there was class-wide standing; either direct or circumstantial evidence could suffice at summary judgment stage of litigation, and court improperly required applicant to show jury "necessarily" would find, rather than "could" reasonably infer, that mismatched information demonstrated misattributed health information. U.S. Const. art. 3, § 2, cl. 1; Consumer Credit Protection Act § 607, 15 U.S.C.A. § 1681e(b); Fed. R. Civ. P. 56.

More cases on this issue

Appeal from the United States District Court for the Western District of Washington, John C. Coughenour, District Judge, Presiding, D.C. No. 2:20-cv-01473-JCC

**Attorneys and Law Firms**

[Matthew W.H. Wessler](#) (argued) and Gabriel Chess, Gupta Wessler LLP, Washington, D.C.; [Jessica Garland](#), Gupta Wessler LLP, San Francisco, California; [Blythe H. Chandler](#), [Beth E. Terrell](#), [Jennifer R. Murray](#), and [Adrienne D. McEntee](#), Terrell Marshall Law Group PLLC, Seattle, Washington; [James A. Francis](#), [Lauren K.W. Brennan](#), and [John Soumilas](#), Francis Mailman Soumilas PC, Philadelphia, Pennsylvania; for Plaintiff-Appellant.

[Nathaniel Garrett](#) (argued) and [Eric A. Nicholson](#), Jones Day, San Francisco, California; [Adam W. Wiers](#), Jones Day, Chicago, Illinois; [Daniel A. Brown](#), [Jeffery M. Wells](#), and [Rodney L. Umberger](#), Williams Kastner, Seattle, Washington; for Defendant-Appellee.

[Erik R. Zimmerman](#) and [Zachary A. Johnson](#), Robinson Bradshaw and Hinson PA, Chapel Hill, North Carolina; Jennifer B. Dickey and [Jonathan D. Urick](#), U.S. Chamber Litigation Canter, Washington, D.C.; for Amici Curiae the Chamber of Commerce of the United States of America and the Consumer Data Industry Association.

Before: [Sidney R. Thomas](#), [Daniel A. Bress](#), and [Salvador Mendoza, Jr.](#), Circuit Judges.

**OPINION**

[S.R. THOMAS](#), Circuit Judge:

This appeal presents the question of whether, following class certification, both named and unnamed class members in a money damages suit must present evidence of standing at summary judgment. We conclude that they must do so. However, we further hold that the usual summary judgment standards apply. We remand for the district court to re-examine the unnamed class members' standing using the usual standards applicable for deciding summary judgment motions.

I

A

Milliman, Inc. is an independent risk management, benefits, and technology firm based in Seattle. One of its services is "Intelliscript," which compiles reports containing a consumer's medical history and sells those reports to third-party insurers such as life insurance companies. When an individual applies for insurance, the insurance company submits an inquiry to Milliman for information on the applicant's medical history, prescription history, or both. The insurance company sends Milliman the applicant's first and last name, date of birth, gender, social security number, and zip code so that Milliman can obtain the applicant's health records from sources such as pharmacy benefit managers, pharmacies, and health insurance companies.

**\*2** Approximately 87% of information that Milliman matches to applicants is based on the applicant's social security number. The remaining 13% of information that Milliman matches to applicants is based on the name, date of birth, zip code, and gender that the applicant provided to the insurance company. Sometimes, Milliman obtains data that exactly matches these identifiers.

Other times, Milliman uses "fuzzy matching" to pull in records that have personal identifying information that is similar to, but not exactly the same as, the applicant's. For example, Milliman will look at records with names that are nearly identical and contain the same consonants, instances where the first and last name are reversed, the use of nicknames for first names, and variations in the use of suffixes or hyphens. When Milliman identifies health records using "fuzzy matching," the company includes them on an applicant's report even if the records are associated with a social security number that is different than the applicant's.

Beyond compiling an applicant's medical data, Milliman's reports also analyze this data and give underwriting recommendations to the requesting insurance company. To do so, Milliman applies the insurance company's "decision criteria" and, based on those criteria, tells the company whether each piece of medical data on the report is a high, medium, or low risk indicator. Milliman's reports communicate their recommendations to the insurer by using red, yellow, and green flags. A report that contains a red flag assigns the applicant the highest risk indicator and means that applicant is not eligible to receive the insurance policy for which they applied. In Milliman's words, this means that an insurance company has "[n]o need [to] review" the application and should decline it outright. A yellow flag instructs insurers to exercise caution prior to extending insurance to an applicant because the applicant is higher risk. A green flag indicates the lowest level of risk.

B

James Healy, the named plaintiff in this case, applied for life insurance with Americo Financial Life and Annuity Insurance Company in April 2020. Americo requested a report of Healy's medical and prescription history from Milliman. But the report Milliman supplied Americo contained another individual's medical records and social security number. As a result, Milliman wrongly attributed serious medical conditions to Healy that it tagged with a red flag, such as liver disease, osteoarthritis, diabetes, chest pains, and sleep apnea. Healy, however, had a clean bill of health.

Americo denied Healy's life insurance application because of the erroneous red flags in Milliman's report. After his application was denied, Healy repeatedly contacted Milliman to fix his report. Milliman failed to timely investigate or correct the errors.

C

On October 5, 2020, Healy filed this class action lawsuit against Milliman. Relevant to this appeal, Healy argued that Milliman's inaccurate consumer reports violated the Fair Credit Reporting Act's requirement at 15 U.S.C. § 1681e(b) that consumer reporting agencies adopt reasonable procedures that ensure the maximum possible accuracy of reported information.

At first, the district court certified an "inaccuracy class" on this basis. Healy alleges that Milliman sold a report about consumers in the inaccuracy class to a third party containing information which did not pertain to the individual who was the subject of the report. To identify members of this class, Healy pointed to 311,226 reports that Milliman sent to insurance companies that (1) had a conflict between the applicant's social security number and the social security number on the data source and (2) contained at least one prescription or medical record that had a yellow or red risk indicator flag.

*3 After class certification but before trial, Milliman filed a motion for partial summary judgment, arguing that Healy needed to demonstrate class-wide standing for the inaccuracy class. In Milliman's view, Healy was unable to do so. Although Healy had identified reports with mismatched social security numbers, Milliman argued that there was no way to determine on a class-wide basis whether a report was actually a "mixed file," i.e., a report which contains mismatched health information. Milliman contended that a report with a mismatched social security number may not be a "mixed file" at all because the record could, for example, include the primary insured's social security number but still feature the applicant's health information.

In response, Healy argued that evidence of class-wide standing was not necessary at summary judgment. Rather, Healy merely needed to produce evidence that the named class member—but not unnamed class members—could satisfy the standing requirements. And, even if evidence of class-wide standing was necessary at summary judgment, Healy argued that it was reasonable to infer that medical records associated with a different social security number than an applicant's contain inaccurate medical information.

The district court granted Milliman's motion for partial summary judgment and dismissed the inaccuracy class. The district court held that, under the Supreme Court's decision in *TransUnion LLC v. Ramirez,* 594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021), Healy had to present "at least some direct evidence of concrete injury on a class-wide basis" at summary judgment in a suit for money damages. The district court concluded that Healy failed to do so here. Though mismatched social security numbers in unnamed class members' reports were "*indicative* of a misattributed or erroneous health record," they were not "*direct* evidence of injury" because "mismatched identifiers do not necessarily demonstrate misattributed health records." For instance, the district court noted that a mismatched social security number could merely be the result of a "simple transposition" error.

Healy moved for reconsideration, or, in the alternative, asked the district court to certify its order for interlocutory appeal. The district court denied the motion for reconsideration but certified its order for interlocutory appeal under 28 U.S.C. § 1292(b).

II

The district court had jurisdiction under 28 U.S.C. § 1331 because Healy's claim arises under the Federal Credit Reporting Act. We have jurisdiction under 28 U.S.C. § 1292(b) because on April 9, 2024, the district court certified its order granting partial summary judgment to Milliman for interlocutory appeal. Healy timely filed a petition for permission to appeal in this Court on April 19, 2024, which we granted on May 24, 2024.

[1]  We review the district court's grant of summary judgment de novo, "including legal determinations regarding standing." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1106 (9th Cir. 2022) (quoting *Alaska Right to Life PAC v. Feldman,* 504 F.3d 840, 848 (9th Cir. 2007)). In doing so, we must determine "whether the district court correctly applied the relevant substantive law." *Stewart v. Thorpe Holding Co. Profit Sharing Plan,* 207 F.3d 1143, 1148 (9th Cir. 2000) (quoting *Robi v. Reed,* 173 F.3d 736, 739 (9th Cir. 1999)).

III

[2]  Healy and Milliman dispute when unnamed members of a certified class for money damages must demonstrate Article III standing. We conclude that the logic of *TransUnion LLC v. Ramirez,* 594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) requires unnamed members of a certified class for money damages to demonstrate standing at summary judgment.

At the start of the life cycle of a class action before a class is certified, the parties agree that only named class members—but not unnamed class members—must demonstrate evidence of standing. To this end, we have consistently held that Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing. *See In re Zappos.com, Inc.,* 888 F.3d 1020, 1028 n.11 (9th Cir. 2018); *Melendres v. Arpaio,* 784 F.3d 1254, 1262 (9th Cir. 2015). We have held that this is the case whether the class action seeks money damages or equitable relief. *See Casey v. Lewis,* 4 F.3d 1516, 1519 (9th Cir. 1993) (assessing whether at least one named plaintiff satisfies the standing requirements in a suit for injunctive relief); *In re Zappos.com,* 888 F.3d at 1028 n.11 (same for class action seeking damages). The Supreme Court did not disturb this approach in *TransUnion* given that it expressly refused to address "whether every class member must demonstrate standing *before* a court certifies a class." *TransUnion,* 594 U.S. at 431 n.4, 141 S.Ct. 2190.

*4  The parties also agree that, at the end of the life cycle of a class action for money damages in particular, both named and unnamed class members must demonstrate standing no later than when they seek to recover individual damages. This conclusion follows inescapably from the Supreme Court's instruction in *TransUnion* that "[e]very class member must have Article III standing in order to recover individual damages." *Id.* at 431, 141 S.Ct. 2190. Neither party argues that *TransUnion* overturned the Supreme Court's prior direction that only one named plaintiff needs to demonstrate standing in a class action seeking equitable relief, even at the final stage of a case when relief is awarded. *See Baggett v. Bullitt,* 377 U.S. 360, 366 n.5, 84

S.Ct. 1316, 12 L.Ed.2d 377 (1964); *cf. Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (assessing "only whether at least one named plaintiff satisfies the standing requirements for injunctive relief"). To this end, the Court in *TransUnion* repeatedly emphasized that the standing requirements for damages and equitable relief are not necessarily the same. *See TransUnion,* 594 U.S. at 436, 141 S.Ct. 2190 ("[A] plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages."); *id.* at 431, 141 S.Ct. 2190 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").

The disagreement at summary judgment in this case is a narrow one: in a class action for damages, do unnamed class members need to demonstrate evidence of standing after class certification but before individual damages are awarded? Healy argues that unnamed class members only need to demonstrate standing at the time that individual money damages are awarded. Milliman instead argues that unnamed class members must demonstrate standing earlier—after class certification at summary judgment. We agree with the district court that *TransUnion* requires unnamed class members to demonstrate evidence of standing after class certification at summary judgment.

To understand why, a brief recap of *TransUnion* is helpful. There, a class of 8,185 individuals sued a credit reporting agency, TransUnion, under the Federal Credit Reporting Act (the "Act"). *TransUnion,* 594 U.S. at 417, 141 S.Ct. 2190. The class argued that TransUnion violated the Act in two ways. First, similar to the situation in this case, the class alleged that TransUnion violated § 1681e(b) of the Act when it failed "to use reasonable procedures to ensure the accuracy of their credit files." *Id.* at 417-18, 141 S.Ct. 2190. Within the class, TransUnion "provided misleading credit reports to third-party businesses" for 1,853 of the class members. *Id.* at 417, 141 S.Ct. 2190. But "[t]he internal credit files of the other 6,332 class members were *not* provided to third-party businesses during the relevant time period." *Id.* Second, the class alleged that certain TransUnion mailings had formatting defects which violated the Act. *Id.* at 418, 141 S.Ct. 2190. On appeal, we determined that all 8,185 class members had standing for both sets of their claims and approved a class damages award of about $40 million. *Id.*

The Supreme Court reversed. First, under the § 1681e(b) reasonable procedures claim, the Court held that only the 1,853 class members whose reports were sent to third-party businesses "demonstrated concrete reputational harm and thus have Article III standing." *Id.* at 417, 141 S.Ct. 2190. Second, under the class's procedural defects claims, the Court determined that only the named plaintiff, Ramirez, had standing because he was the only class member who "demonstrated that [TransUnion's] alleged formatting errors caused [him] any concrete harm." *Id.* at 418, 141 S.Ct. 2190.

*TransUnion* articulated several principles underlying this holding which likewise guide our decision here. For one, the Court made clear that named and unnamed class members must demonstrate standing at trial. As the Court wrote, "in a case ... that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.' " *Id.* at 431, 141 S.Ct. 2190 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Healy suggests this language only applies to the named plaintiff in a class action rather than unnamed class members, but the Court's standing analysis in *TransUnion* indicates otherwise.

*5 In the context of the *TransUnion* class's § 1681e(b) challenge, the Court determined that "[t]he plaintiffs had the burden to prove *at trial* that their reports were actually sent to third-party businesses." *Id.* at 439, 141 S.Ct. 2190 (emphasis added). The Court, therefore, examined the trial record for evidence of injury to not just the named plaintiff, but also unnamed class members. The Court determined that "the 1,853 class members (including the named plaintiff Ramirez) whose reports were disseminated to third-party businesses" had "suffered a concrete harm" that sufficed for standing. *Id.* at 432, 141 S.Ct. 2190. But the Court also examined the trial record to determine whether the 6,332 class members whose reports were not disseminated to third-party businesses—all unnamed plaintiffs—had standing. On this point, the Court wrote that "the plaintiffs did not present any evidence that ... 6,332 [of the unnamed] class members even knew that there" was inaccurate information in their credit files. *Id.* at 438, 141 S.Ct. 2190 (emphasis omitted). In fact, "[i]f those plaintiffs prevailed in this case, many of them would first learn that they were 'injured' when they received a check compensating them for their supposed 'injury.' " *Id.*

So too with the class's procedural claims. Although the Court acknowledged that the named class member, Ramirez, had presented evidence at trial demonstrating that the format of TransUnion's mailings caused him harm, the Court concluded that this was not the case for any of the unnamed class members. *Id.* at 440, 141 S.Ct. 2190. Indeed, "[t]he plaintiffs presented no evidence that, other than Ramirez, a single other class member so much as *opened* the dual mailings, nor that they were confused, distressed, or relied on the information in any way." *Id.* (citation modified). Thus, the Court concluded that only the named class member, Ramirez, had standing for the class's procedural claims. *Id.*

Healy contends that the standing inquiry for unnamed class members must wait until the final stage of a damages action. But there is no suggestion that the Supreme Court referred to any information uncovered during an individualized claims process in concluding that unnamed class members lacked standing for either claim. Rather, the Court concluded that named and unnamed class members alike had a burden to demonstrate standing at trial.

We conclude that *TransUnion* also compels unnamed class members to demonstrate evidence of standing here— after class certification but prior to trial at summary judgment. This follows directly from *TransUnion*'s instruction that plaintiffs "must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* at 431, 141 S.Ct. 2190 (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130). Drawing from our typical summary judgment standard, though unnamed class members "need not establish that they in fact have standing," they would at least have to demonstrate "that there is a genuine question of material fact as to the standing elements." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002). This approach is consistent with *TransUnion*'s express clarification that its holding did not "address the distinct question whether every class member must demonstrate standing *before* a court certifies a class," in contrast to the post-certification summary judgment stage at issue here. 594 U.S. at 431 n.4, 141 S.Ct. 2190.

Healy raises essentially two arguments in response, one focused on *TransUnion* and one focused on our own caselaw. First, Healy argues that *TransUnion* only requires unnamed class members to demonstrate standing at the final stage of a damages action because the case only reached the Supreme Court after the district court had ordered the defendant to pay unnamed class members individual damages. On this point, Healy similarly points to the Court's statement that "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431, 141 S.Ct. 2190. But it does not follow that the Court therefore meant that unnamed class members *only* need to demonstrate standing at the time that they recover individual damages. Instead, *TransUnion* made clear that "in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.' " *Id.* (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

*6 Second, Healy argues that requiring unnamed class members to demonstrate evidence of standing at summary judgment in a suit for money damages would run afoul of our own class action caselaw. We disagree. For one, nearly all of the cases Healy cites predate *TransUnion* and therefore have since been abrogated to the extent they would have permitted unnamed class members to go without demonstrating standing at trial or in any later claims process. *See, e.g., Ramirez v. TransUnion, LLC*, 951 F.3d 1008, 1022-23 (9th Cir. 2020); *Bates*, 511 F.3d at 985; *Casey*, 4 F.3d at 1519; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011); *In re Zappos.com, Inc.*, 888 F.3d at 1028 n.11; *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 680 (9th Cir. 2021); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n.6 (9th Cir. 2016); *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 728 (9th Cir. 2012); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017). The one case Healy cites that postdates *TransUnion*, *DZ Reserve v. Meta Platforms, Inc.*, concerned in relevant part whether a class had "Article III standing to seek injunctive relief," not the damages sought by the class at issue here. 96 F.4th 1223, 1239 (9th Cir. 2024). Likewise, *DZ Reserve* addressed the standing inquiry at the time of class certification, not afterwards at summary judgment. *Id.* at 1231.

Contrary to Healy's contention, our holding comports with this circuit's limited discussion of *TransUnion* to date. As we wrote in *In re Apple Inc. Device Performance Litigation*, "[h]ad the parties brought the case to trial, as in *TransUnion*, plaintiffs' allegation of classwide injury would have been either proven or disproven." 50 F.4th 769, 782 (9th Cir. 2022) (citation modified). But

because the case settled "prior to class certification or *summary judgment*," mere allegations of classwide injury were sufficient without individualized proof. *Id.* (emphasis added).

**[3]** In light of *TransUnion*, therefore, we conclude that the district court correctly determined that both named and unnamed members of Healy's inaccuracy class had to produce evidence of standing at summary judgment.

IV

We part ways from the district court, however, in its application of the summary judgment standard to this case. As noted above, "at the summary judgment stage the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements." *Cent. Delta Water Agency*, 306 F.3d at 947. To survive a motion for summary judgment, therefore, a plaintiff only must show that a rational trier of fact "could" find for them at trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In the context of Healy's § 1681e(b) claim in particular, this Court has held that a consumer at summary judgment must "present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

**[4]** **[5]** **[6]** In doing so, plaintiffs can use either direct evidence or circumstantial evidence. *See, e.g., Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001) (recognizing cases where "circumstantial evidence created a genuine issue of material fact" at summary judgment); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (describing "conventional rule of civil litigation" that plaintiffs may "us[e] direct or circumstantial evidence" to prove their case). Direct evidence "proves [a] fact ... without inference or presumption." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (citation modified). Circumstantial evidence "tend[s] to show" a fact by way of "infer[ences]." *Treasure Val. Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.*, 497 F.2d 203, 208 (9th Cir. 1974).

***7*** **[7]** The district court contravened this settled law of summary judgment in two ways. First, the district court concluded that Healy had the burden to present "direct evidence of concrete injury on a class-wide basis" at summary judgment. But this is incorrect as a matter of law given that either direct or circumstantial evidence may suffice at summary judgment. *See Keyser*, 265 F.3d at 751-52. At summary judgment, Healy identified 311,226 of Milliman's consumer reports issued to insurance companies that included (1) a social security number not belonging to the applicant and (2) a medium or high risk indicator within that report. Although the district court acknowledged that this evidence was "*indicative* of a misattributed or erroneous health record," the court concluded that this was not enough at summary judgment because it was not "*direct* evidence of injury." But evidence which is "indicative" of a misattributed or erroneous health record is the sort of circumstantial evidence which has long been permissible at summary judgment. *See, e.g., Guimond*, 45 F.3d at 1333 (requiring "evidence *tending to show* that a credit reporting agency prepared a report containing inaccurate information" on summary judgment in a § 1681e(b) case (emphasis added)).

Second, and relatedly, the district court imposed an unduly high burden on Healy at summary judgment. In the district court's view, the key problem was that mismatched social security numbers "do not *necessarily* demonstrate misattributed health records." (Emphasis added). However, this observation overstates the burden placed on a party opposing summary judgment. Healy did not need to show that a jury "necessarily" would find that mismatched social security numbers demonstrate misattributed health records. Rather, Healy merely needed to produce enough evidence at summary judgment that a rational trier of fact "could" reasonably infer that this was the case. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The district court therefore erred in applying an improperly narrow standard at summary judgment.

V

In sum, we hold that *TransUnion* requires named and unnamed members of a certified class for money damages to demonstrate that there is a genuine dispute of material fact over standing at summary judgment. We also hold that the district court misapplied the law of summary judgment in assessing whether the class here had done so. We therefore reverse the district court's partial grant of summary judgment and remand for the court to consider whether Healy has presented enough circumstantial evidence that a rational trier of fact could reasonably infer that there was class-wide standing. We express no view on whether the circumstantial evidence does create a genuine dispute of material fact in this regard.

**REVERSED AND REMANDED.**

**All Citations**

--- F.4th ----, 2026 WL 71863

---

**End of Document**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.